MAE N. KAUFMAN

*v.*

SAMUEL R. KAUFMAN.

[Submitted February 23d, 1916. Decided April 1st, 1916.]

In suit to annul a marriage on the ground that defendant fraudulently suppressed the fact that he had syphilis, evidence *Held* insufficient to show defendant fraudulently concealed the fact from complainant when it was his duty to disclose it.

*86 N. J. Eq.*                Kaufman *v.* Kaufman.

On exceptions to master's report.

*Mr. Wilbur A. Heisley,* for the complainant.

FOSTER, V. C.

This bill is filed to have the marriage between complainant and defendant annulled upon the ground that at the time of the marriage defendant fraudulently suppressed the fact that he was then afflicted by the disease called syphilis.

The special master to whom the cause was referred reported adversely to complainant's claim, and the matter comes before the court on exceptions to the master's report.

The evidence shows the parties met in Atlantic City in August, 1906, and in a few weeks became engaged. Complainant was then a resident of Newark and defendant lived in Jacksonville, Florida..

In the fall of 1906 defendant came to Newark and the parties were married on November 1st of that year.

A few days before the wedding defendant consulted Dr. Max Feldman, a physician practicing in Newark, a stranger to him, but an old friend of complainant and her family, in regard to a sore on his lip. From his examination the physician found a sore which he says might have been a usual sore or syphilitic, and he suspected it to be a syphilitic sore. He told defendant of his suspicion and he denied that he had been exposed to syphilis. The doctor accused him of kissing some girls he should not have kissed and defendant denied doing so. Although he knew defendant was about to marry complainant, he did not tell her or her family of his suspicions regarding the nature of the sore, because he states he did not know enough of the facts and did not have sufficient grounds to justify anything, and he might have done defendant a very grave injustice.

From the evidence of the two physicians who testified for complainant, it appears this disease can be contracted in many ways by a person innocent of wrong doing, *e. g.,* by kissing a person afflicted, or by using a drinking cup, and in other ways mentioned in their testimony, and that it was possible at the time Dr. Feldman examined defendant for him to have had

syphilis and be honest in his belief and denial that he did not have it.

It further appears from the progress of the disease in defendant's case, that he was undoubtedly syphilitic when he consulted Dr. Feldman, and it also appears that some years after this consultation a blood test was made and defendant was pronounced by a specialist as positively afflicted with the disease, although he strongly denied it.

The parties lived together, no children being born of the marriage until September, 1914, when complainant convinced, notwithstanding defendant's repeated denials, that he was suffering from this disease, left him and returned to her parents' home in Newark, and they have not lived together or communicated with each other since.

The jurisdiction of this court to annul a marriage for fraud was determined by the court of errors and appeals in *Carris* v. *Carris, 24 N. J. Eq. 516,* and on this authority Chancellor Magie, in *Crane* v. *Crane, 62 N. J. Eq. 21,* granted a decree of annulment, because of the husband's concealment of his syphilitic condition at the time of his marriage, and of his knowingly false denial of his condition prior to the marriage when asked about it.

As stated, the evidence is convincing that defendant was affected with syphilis at and before the time of the marriage, but it was held by the learned chancellor, at page 27 in the *Crane Case,* that, "The mere existence of that foul disease (syphilis) in one of the parties to a marriage contract, although it tendered to render, and upon discovery would render impracticable the purpose of marriage, would not, in my judgment, justify a decree annulling the marriage," and he added, "It must therefore, in my judgment, appear by appropriate and sufficient proof that the defendant either represented to complainant that he was free from syphilis or that he concealed the fact that he had syphilis when he was in duty bound to disclose it."

Complainant's case rests upon the assumption, that as it afterwards developed by the progress of the disease, that defendant was syphilitic, and that the disease in 1914 had reached a stage that clearly indicated that it had been contracted prior to the

marriage, defendant must have known when he consulted Dr. Feldman the nature and cause of the sore upon his lip, and that having such knowledge he fraudulently concealed the fact from the complainant when it was his duty to disclose it.

The evidence does not support this assumption. On the contrary, defendant denied to the physician that he had the disease, or that he had been exposed to it. The physician from his examination was suspicious that the sore was syphilitic, but was not certain about it and did not feel he had sufficient facts on which to base an opinion or to justify him in communicating his suspicion to complainant or her family. It is established that the disease can be contracted innocently of wrong doing, and one not a physician might be affected with syphilis in its earlier stages, at least, and not know it. Because of the possibility that defendant may have contracted the disease innocently, and the further possibility that he could have the disease in its initial stage and not know it, I am unable to find anything to warrant me in determining that the only and the correct assumption arising from the evidence is that at the time of the marriage and prior thereto defendant knew, or must have known, that he had syphilis, and that having such knowledge he concealed the fact from the complainant.

For the reasons stated, my conclusion is that the exceptions to the master's report should be overruled.